

FILED & JUDGMENT ENTERED
Steven T. Salata

September 21 2016

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### SHELBY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 16-40102 |
| Jeffrey Story and | ) | |
| Elizabeth Story | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

## ORDER SUSTAINING AMENDED OBJECTION TO CONFIRMATION OF PLAN

**THIS MATTER** is before this Court upon the amended objection of Lendmark Financial Services, LLC to confirmation of the debtors' proposed Chapter 13 plan, filed March 23, 2016. A hearing was held on July 27, 2016, at which Kimberly Sheek appeared for Lendmark, Beth Carter for the debtors, and Deborah Crowder for Steven Tate (the Chapter 13 trustee). All parties were in agreement on the facts. Having considered the parties' positions, Lendmark's objection must be sustained.

### Findings of Fact

Before bankruptcy, the debtors purchased a heating and air unit (the HVAC unit) from Brothers Heating and Air under a Consumer Credit Installment Sale Contract. That contract was assigned by Brothers to Lendmark. Under the purchase arrangement, Lendmark advanced $5,500 for the debtors' purchase in exchange for a purchase money

security interest (PMSI) in the HVAC unit per Section 25-9-103 of North Carolina's

Uniform Commercial Code (the UCC).

As contemplated by the parties, the HVAC unit was installed in the debtors'

home.  All agree that this made the HVAC unit a fixture under N.C.G.S. § 25-9-102(41).

Lendmark did not effectuate a fixture filing in the applicable public registry pursuant to

N.C.G.S. § 25-9-501.

On March 17, 2016, debtors filed a voluntary Chapter 13 petition in this Court.

On April 9, 2016, Lendmark filed a fully secured proof of claim for $5,467.10 based

upon its PMSI in the HVAC unit.  Due to the lack of a fixture filing, debtors proposed a

Chapter 13 plan which treats the Lendmark debt as an unsecured claim. This objection

soon followed.

### Parties' Positions

The scope of the disagreement is narrow.  The amount or allowability of the debt

is not in question.  All agree that the HVAC unit was bought primarily for personal,

family, or household purposes.  Thus, at the time of the purchase, the HVAC unit was a

"consumer good" under N.C.G.S. § 25-9-102.  Likewise, no one disagrees that at the

point of sale, Lendmark held a PMSI in these consumer goods that was automatically

perfected as chattel under N.C.G.S. § 25-9-309(1).  The only issue to be resolved is

whether the claim should be treated as secured or as unsecured.

Because Lendmark did not file a fixture filing, the debtors and the trustee

maintain that Lendmark's interest is trumped by the bankruptcy estate's status as a

hypothetical judgment lien creditor under 11 U.S.C. § 544.  Thus, according to the

debtors and trustee, Lendmark's secured status was lost upon debtors' bankruptcy.

Conversely, Lendmark argues that the terms "consumer good" and "fixture" are not mutually exclusive.  Lendmark concedes that it would be subordinate to certain interests in the debtors' real property.  But, according to Lendmark, the HVAC unit was and still is a consumer good, and its purchase money security interest attached and was automatically perfected at the time of the purchase under N.C.G.S. § 25-9-309(1).  Lendmark says the fact that the HVAC unit subsequently became a fixture did not render the PMSI interest unperfected.  Put differently, Lendmark maintains that installation of the HVAC unit into the debtors' residence may have made it a fixture but did not cause Lendmark to lose its perfected security interest in these consumer goods.  Because it holds a perfected PMSI, Lendmark believes its interest trumps the bankruptcy estate's rights and the claim should be treated as secured.

## Conclusions of Law

As noted above, "consumer goods" are "goods that are used or bought for use primarily for personal, family, or household purposes."  *Id*. § 25-9-102(23).  A HVAC unit serves personal, family, or household purposes when, as here, it is sold to a family that intends to use it to heat their home.  However, upon installation, that same unit may also become so related to a home that an interest in it arises under real property law.  As a definitional matter, the HVAC unit is both a consumer good and a fixture.

Typically, to perfect a security interest in fixtures, one makes a fixture filing in the register of deeds office in the county where the real property is located.  N.C.G.S. § 25-9-501(a)(1)(b).  This filing provides notice of the security interest to lenders and subsequent purchasers of the real property.

Nothing in the Uniform Commercial Code requires a fixture filing in order to

perfect a security interest in a fixture; rather, the UCC states that a fixture filing is required to obtain *priority* over some conflicting interests in the related real property. *Id*. § 25-9-334(d),(e). Similarly, nothing in the UCC states that a perfected security interest in consumer goods is lost when those goods become a fixture.

Certainly, the absence of a fixture filing recorded in the register of deeds office where the real property is located may cause the lender adverse consequences in terms of priority against other secured creditors, mortgage lenders, or purchasers. *Id*. But, for a secured party who is not concerned about priority over real estate interests, a security interest will be remain perfected as a consumer good without a fixture filing. *Id*. § 25-9-334(e)(3) ("A perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property if . . . [t]he conflicting interest is a lien on the real property obtained by legal or equitable proceedings after the security interest was perfected by any method permitted."); 9B Fredrick H. Miller and Carl S. Bjerre, HAWKLAND UCC SERIES § 9-334:3 [Rev] (June 2016) [hereinafter *Hawkland*] ("[A] fixture interest, perfected by any means, will prevail over a lien obtained by legal or equitable proceedings, so long as the lien arose after the security interest was perfected.").

In short, a PMSI in consumer goods that are also fixtures has priority as against any other secured parties or lien creditors with a conflicting security interest in the same goods arising not as a result of a real estate interest. *Hawkland* § 9-309:2 [Rev] ("If, however, the secured party is not concerned about priority over real estate interests, the exception can be relied on and the security interest will be perfected in the fixtures without filing because they are consumer goods and, as against any other secured parties

or lien creditors with a conflicting security interest in the same goods arising not as a result of a real estate interest, the secured party will have the priority accorded one with such perfection.").

Lendmark's argument may seem off kilter to bankruptcy attorneys conditioned to the general concept that, as to real property, the trustee is treated as bona fide purchaser for value under Bankruptcy Code Section 544.  Normally, under North Carolina's pure race recordation scheme, a subsequent purchaser prevails over unrecorded interests including unfiled deeds of trust and unrecorded security interests.  *Dep't of Transp. v. Humphries*, 496 S.E.2d 563, 566 (N.C. 1998) (quoting 1 James A. Webster, Jr., WEBSTER'S REAL ESTATE LAW IN NORTH CAROLINA § 17-2, at 703 (Patrick K. Hetrick & James B. McLaughlin, Jr., eds., 4th ed. 1994)).

However, Bankruptcy Code Subsection 544(a)(3) grants a trustee bona fide purchaser status as to real property "other than fixtures."  Given Congress's exclusion of fixtures, the trustee is not a purchaser for value of such collateral, but simply a judgment lien creditor.  11 U.S.C. § 544(a)(1).  As summarized by a leading treatise:

> One of the intended by-products of revised Section 9-334(e)(3) [Rev] is to ensure priority in favor of the fixture financer as against the trustee in bankruptcy, who is given the rights under Bankruptcy Code § 544(a) of a hypothetical lien creditor.  As a practical matter, often fixture financers will not care whether they have priority over real estate mortgagees, but they will remain concerned about other creditors of the debtor who might reach the debtor's assets, including the fixture which is being financed.  If the secured party is not concerned with respect to priority against real estate parties, it need not in any case file a fixture filing in the real estate records; that is, if it treats the collateral as a chattel, rather than as a fixture, the priority will remain intact when the competing claimant is other than a real estate owner or encumbrancer.  Section 9-334(e)(3) [Rev] recognizes this and ensures the secured party priority as against lien creditors, including the trustee in bankruptcy.  Absent that provision, the

> trustee in bankruptcy might well be able to urge that, because there was no real estate filing, the interest was unperfected and the trustee (or other lien creditor) should prevail. This result is prevented by offering the security interest protection so long as it was perfected either as a chattel or as a fixture in any manner before the lien arose or the petition in bankruptcy was filed.

*Hawkland* § 9-334:3 [Rev].

As between Lendmark and the trustee acting as a judgment lien creditor,[1]

Lendmark's perfected PMSI in the HVAC primes the trustee's interest. Therefore,

Lendmark's claim must be treated as secured for purposes of this Chapter 13

bankruptcy.[2] Lendmark's objection to confirmation is sustained.


**SO ORDERED.**

**This Order has been signed electronically.**                    **United States Bankruptcy Court**
**The judge's signature and the court's seal**
**appear at the top of the Order.**

---

[1] Whether the claim is secured under Code Section 506 is not at issue at this time as the parties have not disputed the value of Lendmark's interest.

[2] To be absolutely clear, this ruling should not be read outside the narrow confines of a bankruptcy trustee's rights in fixtures; it is not meant to affect the rights of an actual bona fide purchaser or add an extra layer of due diligence to attorneys closing real estate transactions.